Good morning. I'm Allison Dixon on behalf of the Petitioner in this case. In this particular case, we have a couple issues. I think the main issues are, was the Petitioner properly found to be not credible and was the immigration judge who heard the case biased and prejudiced against her? In this particular case, she was originally represented in 1997 by an attorney who has since been disbarred and who had not prepared her. There's no question that she had not met with the attorney prior to that hearing. When she went into that hearing, she was the attorney obviously did not know what was going on in the case and in many ways asked her, put words into her mouth and asked her a very leading question. And what happened to the result of that hearing? Well, the result of that hearing, the immigration judge found that she was not credible. This is the first hearing? This is the first hearing. And went to the BIA? It went to the board. And what did the board do? The board found that she had not been properly represented. Right. So the board ordered what? The board ordered a new hearing. A new hearing. Correct. So now we're talking about a second hearing and the issue here is whether that immigration judge had a basis to find your client's testimony not credible. Is that right? It was the same judge in both cases. So the judge heard the first case in 97 and the second case in 2004. The way that the judge made her determination on whether or whether or not the Petitioner was consistent or incredible was based on the testimony from 1997. So instead of looking at the testimony in 2004 and saying, well, is this testimony consistent, internally consistent on direct and on cross-examination, the judge looked at the statements that had been given in 1997. Well, the testimony in the first hearing was, in fact, taken under oath and it was from your client who made the statements, right? That is correct. From her personal knowledge. That is correct. However, if you look at the transcript and you look at the questions and answers, it becomes very obvious that her testimony was incoherent, if not completely inconsistent. Well, I read the second hearing and it seems the judge gave her all kinds of answers. She said she was scared and she was nervous and all that kind of stuff, but the immigration judge felt that that wasn't persuasive. I mean, these differences were just pretty glaring. Well, the judge found that the differences were pretty glaring. And I would say that the questions that she was asked by the judge, you know, to clarify the answers that she gave, I think are completely consistent with a person who is unfamiliar with our, you know, our English language, has never been in an American court system, and is now being asked questions by a person who clearly doesn't understand the nature of her claim. And so her response is by saying, I was, you know, unable to understand. I think she used the word she was uncomfortable with the attorney. She says that she found indifference from the attorney. And I think her problems were that she was not able, and this is what the board found, she was unable to present the claim at that hearing. So to use the answers that she gave at a hearing where she was unable to present a claim and was prejudiced doesn't really make sense. And then if you want to talk about the inconsistencies that were found, these type of inconsistencies are very minor. For instance, it's not a question of was she kidnapped or not kidnapped. The question is, did she say three days? Did she say five days? Well, at the initial hearing, she said she didn't know who kidnapped her, and the kidnappers didn't identify themselves. But later, she said it was the New People's Army. Well, in the original hearing, she did say that they didn't identify themselves straightforwardly, but she did say that she knew that they were NPA because of the way what they were asking her or the way they came to her house. Yeah, but later she said they identified themselves. At the later hearing when she actually was properly. During the initial hearing, she said she was not blindfolded, but later on she said she was blindfolded. Well, and again, what she said was they took the cloth from around my eyes. So the question is, did she properly understand what the word blindfolded meant when the attorney asked her, are you blindfolded? Earlier, she said she was taken at gunpoint, and second hearing she said they didn't have a gun. Yes. And this is also based on what the asylum application, which she repudiated because the preparer of the asylum application did not prepare it properly. Well, but the asylum application was different too. So you have three sources of inconsistencies. Yes. But I think, again, if you look back at what was happening in the original 1997 hearing, she was not being able to present the case at all, and the questions that she were asked were basically putting words in her mouth. Her application said her boyfriend had been tortured and beaten until he died, but later she said he died from a gunshot wound. Right. But she consistently maintained that he had died from a gunshot wound and consistently maintained that the application was incorrect. I think the problem is the judge decided that she can't keep her story straight. It changes on all these material aspects. Who kidnapped her, whether a gun was used, how her boyfriend died. So why isn't that enough to support the credibility findings? Simply because the first hearing was found to be irregular, so they shouldn't have been allowed to use anything from that hearing. Isn't that your position? That is our position, that they should not have used that. But I think if you look at the so-called inconsistencies, they're really actually very minor. She does say continually that she knew it was NPA. The question is, did they formally identify themselves as NPA or did they not? And if you look at even the original transcript, you'll see that in each place that she's asked whether or not the NPA or how they identified how she knew, that the her statement is either cut off by the attorney or the transcript itself is indiscernible. So you're saying that's not the case. Sotomayor, I want to just interrupt just a second, because I had kind of a more of an overview question. Is it your position that whenever the BIA finds merit to an appeal and orders a new hearing, a brand-new de novo hearing, that the transcript of the first hearing simply passes out of the picture or should pass out of the picture? Or is there something particular to this case that makes that the right answer? Well, I think that it is particular to this case. There are many reasons that the Board may remand for a new hearing. There may be issues that weren't discussed or whatnot. But in this case, the Board made a very particularized finding that not only was she not represented properly. Well, and they also made the point of saying that she was prejudiced by this and that she was unable to present her claim. Well, didn't she take an oath to tell the truth in every detail? She did. In fact, didn't she get up and testify in the first hearing? She did testify. Was there any showing she was under any compulsion from anybody or any duress to lie? Well, I don't know if there was any duress, you know, to make her lie. But there certainly was a lot of duress. Isn't it the role of the I.J. to listen to the differential in testimony and make a decision as to whether he believes or does not believe the testimony of the witness? That is correct. And you want us to substitute our judgment for the I.J.'s judgment, right? Well, I think what we need to do is to look and see, well, when the judge said that she was inconsistent, are these the type of inconsistencies that have been found in asylum law to make a person uncredible? And I would argue that they are not. Because the question of how was the NPA identified is not the same question of saying, well, who was it that, was it Joe Blow out the street or somebody else that kidnapped her? And a person saying, well, three days, five days, the duration of the kidnapping, again, it doesn't go to the heart of the claim. When you went to the Board of Immigration Appeals from the second hearing, did you make the argument that nothing, that it was improper to base a credibility finding on any answers that happened in the first hearing? Yes, that was part of the argument. The BIA didn't talk about that. No, the BIA, actually, in their order, they didn't talk about a lot of things. They also didn't talk about the bias that Petitioner asserted against the immigration judge. But what's implicit in their decision is, by saying no clear error in the determination, is that it was appropriate for the immigration judge to take into consideration answers in the first hearing. Well, they did say that. And, again, we're also looking at a little bit of a split in the law. The BIA is not necessarily bound by the Ninth Circuit precedents, which are very clear on the type of law. I know. They tell us that every once in a while. And what they're using, you know, is the laws from the other circuit to uphold that. Clearly, if you have three things, you know, whether the NPA formally identified themselves, whether she was kidnapped for, you know, three to five days, whether or not she was taken at gunpoint, those things are relatively minor. The question about the gun versus the not gun in the kidnapping, again, if you look at the original testimony, it's very muddled and unclear. But what she does say when she finally is properly represented is that they didn't have guns, but they used a paddle. To me, this is where she's actually getting a chance to say what she wants to say. She's not trying to embellish her claim. She's not trying to add on to it. In fact, one could argue that she's diminishing the claim by saying that there was no gun involved. Precisely what are you asking us to do? What do you want us to do? Well, ultimately, I guess we would like to have the order of the immigration judge over to us. Do you want us to hold that in this case or in all cases, it is improper to base a credibility finding on anything that happened in a hearing that was essentially wiped out by the BIA? Is that what you're asking us to hold? That is the general rule we're asking for. But when you have a case like this where the board has found that she was clearly prejudiced, that she was not allowed to present the claim, then to use that hearing against her, I think, would be inappropriate at this time, at that time. So pretty much you're asking us to hold that if you get a new hearing because of something that went on with a lawyer, that everything that she said is out of bounds. Well, I think only when it rises to the level of a due process violation, which this one has. It's very clear in the case law that when a person is not able to present their claim, that that is, in fact, a due process violation. Not every remand from the board involves a due process violation, but this is extremely egregious in this particular case. Is there any analog in criminal law, for example, if you, let's say that you are prosecuted for a burglary and you're successful and you get convicted, and you go up on appeal and the appellate court, maybe the Ninth Circuit, finds that you were denied your right to counsel. And so you go back for another trial and this time you get on the stand and tell a completely different story. Are you prohibited from, are you protected from being impeached by your earlier testimony because you didn't have a lawyer? I think it depends, again, on the nature of the representation. If the initial representation was so poor that the attorney might as well have been talking about a different case. Well, the difference between the criminal case in this case is you, or your client, selected the lawyer that was to represent. In the criminal case, most of them are appointed or run into the problem. Well, that is true. In immigration, we don't have a public defender system. So if you want an attorney, you are required to find one. But I know of no cases that say you can't use the testimony from the first trial to impeach different testimony of the second trial. As a matter of fact, there's even an exception to Miranda. If you fail to advise somebody of his Miranda rights and the confession is suppressed, there's still impeachment exceptions and all other things you can use that for that are triggered by different behavior by the client later on. So I'm having trouble finding a parallel or an analog in other areas. Well, I think it goes back to our issue is that she was so, the representation that she got was terrible. It was not. Well, Miranda, you didn't get your rights. And that's precisely what Miranda is all about. You have a right to a lawyer. Anything you say can and will be used against you. And the exceptions are now legion. That protects you from having that used against you. But when you get up and start telling a different story, then you're in trouble. That's of constitutional dimension. That's understood. But her story, as I was saying, isn't quite that different. It's not like she went up there and said A, and then the next day got up there and said Z. What she did was say the same story, but the details of it and the so-called inconsistencies, as I say, are very minor. But that's how you blow up a story on cross-examination. You show that it starts differing on all these little points. I mean, that's classic cross-examination by lawyers in court. Well, you said green. Now you say blue. Oh, you said it was a Ford. Now it's a Chevy. And then you argue to the jury, he can't keep his story straight. Why? Because he's making it up. That's pretty much what we had happen here. Well, I think not, because it's not a difference between a Chevy and a Ford. You know, it's a difference between was it a, you know, a ---- Blindfolded and not, NPA and not, gun and not, boyfriend killed. That's where I think part of the problem is. In the first testimony, she never said that she didn't know who it was that kidnapped her. The question was, how do you know it was the NPA? And what she said is, I know it was the NPA from what we can even get on the transcript, which is, as I said, very difficult to read. She said, I knew it was the NPA because of what they said to me. I knew it was the NPA because of the way they came. So it wasn't a question of, I don't know who it was today and tomorrow I can tell you who it is. She was consistent that it was the NPA all along. And so it's just a question of whether it was a formal identification or an informal identification. Counsel, you have considerably exceeded your time. Thank you very much. And we'll hear now from the government. Good morning. May it please the court. Charles Mullins, I represent the Attorney General. I want to apologize to the court. I spent a great deal of time last night working on my outline, walked off, and left it laying on the hotel table this morning. Make it short this morning. Well, I'll begin by asking you some questions that might focus our discussion. I'd appreciate your addressing something that wasn't talked about very much in your opposing counsel's argument. And that is whether the immigration judge was biased given the comments that were made during the hearing. Your Honor, the board, I believe, explicitly disavowed the one comment made by the judge. But I would point out that, as we point out in our brief, the judge had a clear basis in the record for her decision. It wasn't that the judge simply said, I've looked at the witness' eyes, I've watched her demeanor, I find her not to be testifying credibly. The judge said at transcript at page 6, she says one thing. Page Y, she says another thing. On page 53, she says she was blindfolded. But before, she said she was not blindfolded. And by the way, the specific word, blindfolded. My question kind of is one step behind that. If there's a biased decision-maker, then the fact that an unbiased decision-maker could have come to the same result really isn't this positive. So I guess, is this a neutral decision-maker? Your Honor, first of all, we would submit that it is a neutral decision-maker. She did apparently make a comment that the board did not approve of. Where did the board not – what was the comment and what did the board not approve of? I believe I cite the comment in my brief. The – I believe the board made – the judge made a comment that the lady – the witness or the petitioner had used every means in her power to stay for a certain number of years, as many years as she could, and that she didn't believe her any more now than she did at the first hearing. Now, obviously, the judge is making a credibility determination. The judge can say, you know, I didn't believe her before, I don't believe her now. I don't think that, in and of itself, shows bias. But in the second decision, the petitioner asked for reconsideration of the decision that's before this court, and the board denied reconsideration. And as we point out in our brief, the petitioner did not file a second petition for review of that decision. But the bottom – I believe it's a record at the – page 3 – says, well, we do not And let me ask you another overview question. Are there – are there any circumstances, in your view, where the board orders a de novo hearing when the matters that were discussed at the first hearing shouldn't be held against the petitioner in the second round? I'm not aware of any. I would preface that by saying that I do not normally argue immigration cases. I had this case while on a detail from a different agency to the Department of Justice. So this is outside of my normal expertise. But I'm – the research I have done, I have not encountered any. I would point out, and I would invite you to read the transcript of the 1997 hearing, the petitioner obviously understood English. There are no instances that I recall – and I read the transcript again this morning – there are no instances where the petitioner says, I didn't understand the question. Could you please repeat that? Would that be a situation, though, in which perhaps the first hearing couldn't be used? Let's say the board finds that the person didn't understand English and didn't have an adequate translator, and that the transcript is unreliable. If the board had found that, which I would point out that the board did not view, the record did not reference the lack of a translator. It simply said that the attorney did not prepare the witness, didn't discuss things with the witness, apparently did not correct mistakes that the witness alleged were in the application. Now, had the board said, we find that a translator would have been in order and that we are remanding this because of ineffective assistance, because we find ineffective assistance because the attorney did not get a translator. Well, but, okay, now we're one step removed from that, but the board did say the first time, excuse me, that the counsel did not correct the written application, did not adequately prepare for the hearing, and that she was prejudiced by that. So what is the prejudice? And if the person has been prejudiced by the way in which the hearing went forward, where does that fall on your continuum? I would argue that it doesn't fall on the side of the continuum that my friend is arguing for, for the simple reason that Judge Beezer pointed out earlier. The person takes an oath to tell the truth, the attorney debriefs them to be able to answer  That is a most significant event, if not in her life, at least in the process of which she's applying for asylum. Again, I would invite you to take a look at the 97 transcript. Again, this is a lady who filled out her original application in English. While it may not have been, you know, her native language, she was certainly comfortable enough in it to fill out her application, and she was certainly comfortable answering questions throughout the first hearing. And I do not believe at one time she expressed any inability to understand the questions or comprehend the questions. As I said, when she's talking about the incidents of being blindfolded, she was asked, were you blindfolded? And she says, I believe, no, I was not blindfolded. She used the term herself. So she certainly understood what it meant. The Court has no further questions? I don't believe we do. Thank you, Your Honor. It's always an honor to appear before you. Thank you. We're happy to have you here. And as you used up your time, there isn't any left for rebuttal. So we'll the case just argued is submitted.
judges: Beezer, Trott, Graber